## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MONIQUE FRASER, CASSANDRA MALVO, TANYA AUSTIN, WINSTED FRASER, LIONEL ALARCON, CHRISTIAN FOSTER, and MAHLON SMITH, on Behalf of Themselves and Others Similarly Situated, | § § § § § § § § | |
| *Plaintiffs,* | § § | |
| vs. | § § | CASE NO. 4:11-cv-03890 |
| PATRICK O'CONNOR & ASSOCIATES, L.P. D/B/A O'CONNOR & ASSOCIATES, O'CONNOR MANAGEMENT, L.L.C., AND PATRICK O'CONNOR, | § § § § § § | |
| *Defendants.* | § | JURY TRIAL DEMANDED |

### PLAINTIFFS' MOTION FOR CLASS NOTICE AND FOR LIMITED DISCOVERY

OF COUNSEL:

David G. Clark
Attorney-in-Charge
Federal I.D. No.: 36880
State Bar No.: 24040698
david.clark@mizeminces.com
808 Travis Street, Suite 453
Houston, Texas 77002
Telephone: (713) 595-9675
Facsimile: (713) 595-9670

Katherine T. Mize
Federal I.D. No.: 15523
State Bar No.: 00784617
katherine.mize@mizeminces.com
David M. Minces
Federal I.D. No.: 435389
State Bar No.: 24026880
david.minces@mizeminces.com

MIZE, MINCES & CLARK, PC
808 Travis Street, Suite 453
Houston, Texas 77002
Telephone: (713) 595-9675
Facsimile: (713) 595-9670

ATTORNEYS FOR PLAINTIFFS

<u>TABLE OF CONTENTS</u>

I.     FACTUAL BACKGROUND ...................................................................... 1

       A.    Plaintiffs Were Not Paid for Overtime Hours Worked ........................... 1

       B.    At Least 177 Similarly Situated Property Tax Consultants Were Also
             Denied Overtime ........................................................................... 2

II.    SCOPE OF COLLECTIVE ACTION AND EVIDENCE PRESENTED ................ 4

       A.    Limited Scope of This Collective Action .................................................. 4

       B.    Evidence Presented in Support of the Requested Notice to Class
             Members ........................................................................................ 4

III.   ARGUMENTS AND AUTHORITIES .................................................. 5

       A.    The Court Should Apply a Two-Stage Procedure to Certify This
             Collective Action............................................................................. 5

             i.     THE TWO-STATE CERTIFICATION PROCESS STARTS WITH A LENIENT
                    NOTICE STAGE, WHICH TYPICALLY RESULTS IN CERTIFICATION ........ 7

             ii.    COURTS FAVOR FLSA COLLECTIVE ACTIONS BECAUSE THEY
                    PROMOTE THE REMEDIAL NATURE OF THE FLSA AS WELL AS JUDICIAL
                    EFFICIENCY........................................................................... 8

             iii.   COURTS MAKE THE FACTUAL DETERMINATION AS TO WHETHER
                    PLAINTIFFS ARE SIMILARLY SITUATED AFTER NOTICE IS SENT AND
                    DISCOVERY IS LARGELY COMPLETE ................................................... 10

       B.    Conditional Certification and Notice are Appropriate Because Similarly
             Situated Property Tax Consultants Exist Who May Join This Lawsuit. 12

             i.     O'CONNOR & ASSOCIATES ADMITS THAT AT LEAST 177 OTHER
                    PROPERTY TAX CONSULTANTS PERFORMED THE SAME JOB DUTIES AS
                    PLAINTIFFS ............................................................................ 12

             ii.    PROPERTY TAX CONSULTANTS ARE SUBJECTED TO THE SAME
                    WRITTEN POLICIES, WHICH REQUIRE WORKING EXTENDED OVERTIME
                    HOURS .............................................................................. 14

             iii.   OTHER EVIDENCE FURTHER ESTABLISHES THAT PLAINTIFFS AND
                    OTHER PROPERTY TAX CONSULTANTS ARE SIMILARLY SITUATED..... 15

C.    Plaintiffs Have Met Their Burden of Demonstrating a Reasonable Basis for Collective Action Certification and Notice to Potential Plaintiffs ... 17

D.    Notice Should be Expedited Due to the Running of the Statute of Limitations ................................................................................................ 20

E.    The Proposed Notice is Fair and Adequate .............................................. 21

F.    The Proposed Limited Discovery is Essential to Ensure Timely Notice ........................................................................................................ 22

IV.   CONCLUSION ................................................................................................... 24

TABLE OF AUTHORITES

**Cases**

*Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516 (5th Cir. 2010)............................12

*Aguayo v. Oldenkamp Trucking*, 2005 WL 2436477 (E.D. Cal. Oct 3, 2005)........................20

*Alba v. Madden Bolt Corp.*, Civil action H-02-1503 (S.D. Tex. June 5, 2002)...................6, 22

*Allen v. Marshall Field & Co.*, 93 F.R.D. 438 (N.D. Ill. 1982) ...................................20

*Brown v. Money Tree, Wong. Inc.*, 222 F.R.D. 676 (D. Kan. 2004).....................................19

*Bursell v. Tommy's Seafood Steakhouse*, No. H-06-0386, 2006 WL 3227334, at *2 (S.D. Tex. Nov. 3, 2006) .............................................................................6, 19

*Camper v. Home Duality Mgmt, Inc.*, 200 F.R.D. 516 (D. Md. 2000).....................................20

*Clarke v. Convergys Customer Management Group, Inc.*, 370 F.Supp.2d 601 (S.D. Tex. 2005) ....6, 7, 8, 17, 19, 20

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).........................................................6

*Dybach v. Fla. Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991) ........................................8

*Foraker v. Highpoint Southwest, Services, L.P.*, No. H-06-1856, 2006 WL 2585047, at *3 (S.D. Tex. Sept. 7, 2006) .............................................................................6

*Gardner v. Assoc. Commercial Corp.*, Civil Action No. H-00-3889 (S.D. Tex. Dec. 20, 2000).............19

*Garner v. G.D. Searle*, 802 F. Supp. 418 (M.D. Ala. 1991) .............................................9, 21, 22

*Guzman v. Varco Intern., Inc.*, H-01-4000, 2002 WL 32639237, at *3 (S.D. Tex. May 30,    2002) .......6

*Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996), *cert. denied,* 117 S.Ct. 435 (1996)....7, 10, 17, 20

*Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358 (M.D. Ala. 1999) ............................................11

*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)................................................9, 21, 22

*Johnson v. TGF Precision Haircutters, Inc.*, 319 F. Supp. 2d 753 (S.D. Tex. 2004) .....................6, 7, 22

*Krueger v. New York Tel. Co.*, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993)..................................11

*Moore v. Special Distribution Servs. Inc.*, No. H-06-3946, 2007 WL 2318478, at *2 (S.D. Tex. Aug. 8, 2007) .............................................................................6, 7, 8, 12, 19

*Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995).............................................5, 6, 8, 11, 18

*Reich v. Circle C. Investments, Inc.*, 998 F.2d 324 (5th Cir. 1993) ...........................................10

*Roussell v. Brinker Intern., Inc.*, 441 Fed. Appx. 222 (5th Cir. Sept. 14, 2011) ...............................9, 10

*Schwartz v. MCI Telecomms. Corp.*, No. H-98-1574 (S.D. Tex. Feb. 19, 1999) .....................................19

*Schwed v. GE*, 159 F.R.D. 373 (N.D.N.Y. 1995) ...........................................................................11

*Shaffner v. Cash Register Sales & Service of Houston, Inc.*, No. H-05-2064, 2006 WL 1007542, at *1 (S.D. Tex. April 17, 2006)...........................................................................6, 19

*Shain v. Armour & Co.*, 40 F. Supp. 488 (W.D. Ky. 1941) ................................................................10

*Tolentino v. C&J Spec-Rent Services Inc.*, 716 F.Supp.2d 642 (S.D. Tex. 2010) .................................22

*Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941 (M.D. Fla. 1994)....................................................10

*Vargas v. The Richardson Trident Co.*, No. H-09-1674, 2010 WL 730155, at *7 (S.D. Tex.  Feb. 22, 2010) .............................................................................................6, 9, 19

*Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902 (S.D. Tex. 2010) ..........................8, 10, 21

*Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807 (S.D. Tex. 2003) ...............................................19

*Williams v. Sprint/United Mgmt Co.*, 222 F.R.D. 483 (D. Kan. 2004)...................................................19

*Yaklin v. W-H Energy Servs., Inc.*, No. C-07-422, 2008 WL 1989795, at *1 (S.D. Tex. May 2, 2008) ..9

*Zhao v. Benihana, Inc.*, No. 01-CV-1297, 2001 WL 845000, at *2 (S.D.N.Y. May 7, 2001) ................19

**Code of Federal Regulations**

29 C.F.R. § 790.021(b)(2) ....................................................................................................25

29 C.F.R. §§ 778.113, 778.117 .................................................................................................3

**Statutes**

29 U.S.C. § 256(a) .............................................................................................................20

29 U.S.C. § 207(a) ...............................................................................................................3

29 U.S.C. § 216(b)...............................................................................................................7

# I.
# FACTUAL BACKGROUND

## A.  Plaintiffs Were Not Paid For Overtime Hours Worked

1.      Plaintiffs worked for Defendants Patrick O'Connor & Associates, L.P. d/b/a O'Connor & Associates, O'Connor Management, L.L.C., and Patrick O'Connor (collectively referred to as "O'Connor & Associates") as Property Tax Consultants. O'Connor & Associates is a real estate service company.  Among other things, O'Connor & Associates offers a property tax reduction service to its clients, which includes helping residential homeowners protest over-assessed property values to reduce property taxes.[1] Plaintiffs and other Property Tax Consultants performed these property tax reduction services for O'Connor & Associates. *See, e.g.,* Exhibit 1, Declaration of Monique Fraser ("Fraser Decl.") ¶ 3; Exhibit 2, Declaration of Cassandra Malvo ("Malvo Decl.") ¶ 3; Exhibit 3, Declaration of Mahlon Smith ("Smith Decl.") ¶ 3; and Exhibit 4, Declaration of Carolyn Thompson ("Thompson Decl.") ¶ 3.

2.      O'Connor & Associates violates the Fair Labor Standards Act ("FLSA") by failing to pay Plaintiffs and other Property Tax Consultants overtime. O'Connor & Associates contends that Property Tax Consultants are exempt from overtime. As a result, it pays Property Tax Consultants a monthly salary plus commission,

---

[1]      Although O'Connor & Associates also provides property tax reduction services to commercial property owners, this lawsuit only seeks to recover unpaid compensation for overtime hours spent providing services to residential homeowners.

regardless of the number of hours they work. During the peak property tax season,[2] Property Tax Consultants regularly work up to 90 hours each week, often working until midnight or later. This collective action seeks to recover the unpaid overtime compensation and other damages owed to Plaintiffs and other residential Property Tax Consultants.

**B. At Least 177 Similarly Situated Property Tax Consultants Were Also Denied Overtime**

3.      O'Connor & Associates has already acknowledged that it employed more than 177[3] similarly-situated Property Tax Consultants within the last three years. (Exhibit 7, Interrogatory Responses at No. 7 and attached Spreadsheet 2). Specifically, O'Connor & Associates responded to an interrogatory, which requested the identity of Property Tax Consultants with the same job duties as Plaintiffs during the past three years, by providing a spreadsheet with the names, addresses, and phone numbers of 177 other Property Tax Consultants. *Id*.

4.      O'Connor & Associates contends that none of its Property Tax Consultants are entitled to overtime compensation. Thus, it is undisputed that, just like Plaintiffs, other Property Tax Consultants were not paid overtime compensation for hours worked over 40 in a workweek. (*See, e.g.*, Exhibits 1-3 ¶¶ 5-6, 10-11; Exhibit 4 ¶¶ 5, 9-10). Since O'Connor & Associates maintains a policy of not paying overtime to Property Tax Consultants, the central issue in this case is whether Plaintiffs and

---

[2]      The peak property tax season starts in the April-May timeframe and continues until the end of the year or later, depending on company needs.

[3]      O'Connor & Associates actually identified and produced the contact information for 189 other Property Tax Consultants. However, that list included each of the seven named Plaintiffs, as well as five other Property Tax Consultants who may not have been working for Defendants during the relevant notice period: November 4, 2008 to present.

other residential Property Tax Consultants were properly classified as exempt from overtime under the FLSA.

5.      At this stage in the lawsuit, the named Plaintiffs seek to notify Property Tax Consultants currently and formerly employed by O'Connor & Associates within the past three years, who provided tax reduction services to residential homeowners, of their right to recover their unpaid overtime compensation by joining this lawsuit. Since Plaintiffs and other Property Tax Consultants performed the same or similar job duties, this collective action does not turn on individual facts related to an exemption defense or unique off-the-clock working habits. Instead, this collective action focuses on a clearly-defined, cohesive group of employees who were simply not paid for their overtime hours pursuant to a policy of O'Connor & Associates.

6.      Plaintiffs and other Property Tax Consultants are *similarly situated* in that they performed similar job duties, and were victims of the same unlawful compensation structure and payroll practices. *See* 29 U.S.C. § 207(a) and 29 C.F.R. §§ 778.113, 778.117. Given the number of named Plaintiffs and potential opt-in Plaintiffs, the overtime claims presented in this straight-forward misclassification case can and should be adjudicated on a collective-action basis.

**II.**
**SCOPE OF COLLECTIVE ACTION AND EVIDENCE PRESENTED**

**A. Limited Scope of This Collective Action**

7.     Plaintiffs request that notice be sent to all Property Tax Consultants currently or formerly employed by O'Connor & Associates who: (1) provided property tax reduction services to residential homeowners; (2) were paid a salary plus commission based on production; and (3) worked more than forty (40) hours per week at any time between November 4, 2008 and present.

**B. Evidence Presented in Support of the Requested Notice to Class Members**

8.     The following evidence illustrates the number of similarly-situated Property Tax Consultants who may join Plaintiffs in this lawsuit, if it is certified as a collective action:

a.   **Declarations of Three Plaintiffs.** Three of the seven named Plaintiffs have attached declarations identifying twenty-six (26) other Property Tax Consultants who performed the same job duties, worked the same long hours, were similarly compensated, and were similarly denied overtime. In addition, three (3) of those individuals have already expressed interest in joining this lawsuit.

b.   **Declaration of Opt-In Plaintiff.** Carolyn Thompson has already filed a Notice of Consent to join this lawsuit as an opt-in Plaintiff. Her attached declaration explains that she had the same job duties, working hours, and compensation structure as Plaintiffs and other Property Tax Consultants and, like them, was denied overtime pay.

c.   **Spreadsheet Produced by Defendants.** In response to preliminary discovery requests, Defendants have produced a spreadsheet identifying 177 other Property Tax Consultants who performed the same or similar job duties as Plaintiffs during the past three years, along with their last known addresses and telephone numbers.

9.     Plaintiffs attach and incorporate by reference the following evidence and documents in support of the relief requested in this Motion:

| | |
|---|---|
| **Exhibit 1** | Declaration of Monique Fraser |
| **Exhibit 2** | Declaration of Cassandra Malvo |
| **Exhibit 3** | Declaration of Mahlon Smith |
| **Exhibit 4** | Declaration of Carolyn Thompson |
| **Exhibit 5** | Plaintiffs' Acknowledgement of Property Tax Department Expectations |
| **Exhibit 6** | Plaintiffs' Compensation/Employment Agreement |
| **Exhibit 7** | Patrick O'Connor & Associates, L.P.'s Interrogatory Responses |
| **Exhibit 8** | Patrick O'Connor & Associates, L.P.'s Responses to Plaintiffs' First Requests for Admission |
| **Exhibit 9** | O'Connor & Associates Property Tax Consultant Job Standards |
| **Exhibit 10** | Proposed Declaration of Defendants' Representative (concerning accuracy/completeness of employee list) |
| **Exhibit 11** | Proposed Notice to Property Tax Consultants Currently or Formerly Employed by O'Connor & Associates |
| **Exhibit 12** | Proposed Consent to Become a Party Plaintiff |

### III.
### ARGUMENTS AND AUTHORITIES

**A. The Court Should Apply a Two-Stage Procedure to Certify This Collective Action**

10.    In FLSA cases, this Court adheres to the two-stage class certification methodology described in *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir.

1995) (noting that the age discrimination statute "explicitly incorporates" § 216(b) of the FLSA), *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003). *See, e.g., Clarke v. Convergys Customer Management Group, Inc.,* 370 F. Supp. 2d 601, 604 (S.D. Tex. 2005) (explaining that the two-stage certification procedure is the prevailing test among federal courts) (Harmon, J.); *Moore v. Special Distribution Servs. Inc.*, No. H-06-3946, 2007 WL 2318478, at *2 (S.D. Tex. Aug. 8, 2007) ("This court, in FLSA cases, adheres to the two stage class certification methodology described in *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995).") (Harmon, J.); *Vargas v. The Richardson Trident Co.*, No. H-09-1674, 2010 WL 730155, at *7 (S.D. Tex. Feb. 22, 2010) (reiterating the two-stage certification procedure discussed in *Special Distribution*) (Harmon, J.).

11.    The practice of other district courts in the Southern District of Texas has been to employ the same two-stage approach to certify FLSA collective actions. *See, e.g., Alba v. Madden Bolt Corp.,* No. H-02-1503, 2002 WL 32639827, at *1 (S.D. Tex. June 5, 2002) (granting a motion for notice to allow potential plaintiffs to opt-in to the lawsuit) (Hoyt, J.); *Bursell v. Tommy's Seafood Steakhouse,* No. H-06-0386, 2006 WL 3227334, at *2 (S.D. Tex. Nov. 3, 2006) (Rosenthal, J.); *Foraker v. Highpoint Southwest, Services, L.P.,* No. H-06-1856, 2006 WL 2585047, at *3 (S.D. Tex. Sept. 7, 2006) (Atlas, J.); *Shaffner v. Cash Register Sales & Service of Houston, Inc.*, No. H-05-2064, 2006 WL 1007542, at *1 (S.D. Tex. April 17, 2006) (Ellison, J.); *Johnson v. TGF Precision Haircutters, Inc.*, 319 F. Supp. 2d 753, 755 (S.D. Tex. 2004) (Werlein, J.); *Guzman v.*

*Varco Intern., Inc.*, H-01-4000, 2002 WL 32639237, at *3 (S.D. Tex. May 30, 2002) (Gilmore, J.).

      i.  THE TWO-STAGE CERTIFICATION PROCESS STARTS WITH A LENIENT NOTICE STAGE, WHICH TYPICALLY RESULTS IN CERTIFICATION

12.    To create an opt-in class under the FLSA, an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated."  29 U.S.C. § 216(b); *Mooney,* 54 F.3d at 1213-14; *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir. 1996), *cert. denied,* 117 S.Ct. 435 (1996) ("For an opt-in class to be created under section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees 'similarly situated.'") (internal citations omitted).

13.    As this Court described in *Special Distribution*, the two-stage certification process starts with a lenient notice stage, which typically results in conditional certification of a representative class:

> Under this methodology, "the trial court approaches the 'similarly situated' inquiry via a two-step analysis."  *Mooney,* at 1213.  At the "notice stage," the court examines the pleadings and any affidavits which have been submitted to determine whether notice of the action should be given to potential class members.  *Id.* at 1213-14.  "Because the court has minimal evidence, this determination is usually made using a fairly lenient standard [ ] and typically results in 'conditional certification' of a representative class."

*Special Distribution Servs.*, 2007 WL 2318478, at *2 (*citing Mooney*, 54 F.3d at 1214); *see also Clarke*, 370 F. Supp. 2d at 604 (same); *see also Johnson*, 319 F. Supp. at 753  ("The standard applied [at the notice stage] is a lenient one, usually resulting in "conditional

certification" of a representative class, to whom notice is sent and who receive an opportunity to 'opt in.'") (Werlein, J.).

14.     To determine whether there are other similarly situated individuals justifying notice, courts examine whether there are other employees "who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Special Distribution Servs.*, 2007 WL 2318478, at *2 (citing *Dybach v. Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-78 (11th Cir. 1991)); *Clarke*, 370 F. Supp. 2d at 605. Notice is appropriate when there is "a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Clarke*, 370 F. Supp. 2d at 605 (internal citations omitted).

15.     To grant a motion for notice in a collective action, courts generally require nothing more than substantial allegations that the putative class members were together victims of a single decision, policy, or plan infected by discrimination. *Mooney*, 54 F.3d at 1214 n.8; *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 915 (S.D. Tex. 2010) (explaining that a plaintiff need only make a minimum showing to guide the court's determination in whether to issue notice to potential class members).

     ii.  COURTS FAVOR FLSA COLLECTIVE ACTIONS BECAUSE THEY PROMOTE THE REMEDIAL NATURE OF THE FLSA AS WELL AS JUDICIAL EFFICIENCY

16.     Courts apply a lenient standard at the notice stage because it takes place prior to the completion of discovery.  *Mooney,* 54 F.3d at 1214; *Clarke,* 370 F.

8

Supp. 2d at 606 ("Because little, if any, discovery has taken place, 'this determination is usually made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.'") (Harmon, J.)

17.    FLSA collective actions "are generally favored because such actions reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding common issues of law and fact arising from the same alleged . . . activity." *Yaklin v. W-H Energy Servs.*, Inc., No. C-07-422, 2008 WL 1989795, at *1 (S.D. Tex. May 2, 2008) (Jack, J.) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)); *see also Vargas v. The Richardson Trident Co.*, No. H-09-1674, 2010 WL 730155, at *10 (S.D. Tex. Feb. 22, 2010) (recognizing "a collective action as the most efficient way to proceed" when eight individuals filed consent forms and other potential plaintiffs had been named in the plaintiff's motion for class notice) (Harmon, J.); *Roussell v. Brinker Intern., Inc.*, 441 Fed. Appx. 222, 227 (5th Cir. Sept. 14, 2011) ("Section 216(b) collective actions are intended "to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer.") (citations omitted). After all, to impose a strict standard of proof at the notice stage would unnecessarily hinder the development of collective actions and would undermine the "broad remedial goals" of the FLSA. *Garner v. G.D. Searle,* 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Sperling,* 118 F.R.D. at 407 ("[N]otice to absent class members need not await a conclusive finding of 'similar situations.'").

9

18.     "The evident purpose of the Act [FLSA] is to provide one lawsuit in which the claims of different employees, different in amount but all arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other." *Shain v. Armour & Co.*, 40 F. Supp. 488, 490 (W.D. Ky. 1941). The "remedial nature of the FLSA . . . militate[s] strongly in favor of allowing cases to proceed collectively." *Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2008 WL 14079, at *24 (S.D. Tex. July 9, 2008) (Ellison, J.) (citing *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (recognizing FLSA's remedial purposes)).

> iii.  COURTS MAKE THE FACTUAL DETERMINATION AS TO WHETHER PLAINTIFFS ARE SIMILARLY SITUATED AFTER NOTICE IS SENT AND DISCOVERY IS LARGELY COMPLETE

19.     During the notice stage, a plaintiff's claims and positions need not be identical to the positions of potential opt-ins, they need only be similar. *Grayson*, 79 F.3d at 1096 (explaining that named plaintiffs need show only that that their positions are similar, not identical, to the positions held by the putative class members); *Villarreal*, 751 F. Supp. 2d at 918 ("The positions need not be identical, but similar.") (citations omitted); *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla. 1994) ("To be similarly situated, courts have held positions need not be identical, but similar.") (internal citations omitted). Plaintiffs only need to demonstrate "a reasonable basis" for the allegation that a class of similarly situated persons exists. *Grayson*, 79 F.3d at 1097.

20.     Once the court makes the preliminary determination that the potential plaintiffs are similarly situated, the case proceeds as a collective action throughout discovery. *Mooney,* 54 F.3d at 1214 n.7. Discovery is relevant thereafter both as to the merits of the case and for the second step in the collective action process, where the court evaluates conflicting evidence developed during discovery to test the validity of the preliminary decision made at the notice stage. *See Schwed v. GE,* 159 F.R.D. 373, 375 (N.D.N.Y. 1995) ("[E]ven where later discovery proves the putative class members to be dissimilarly situated, notice...prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]."); *Krueger v. New York Tel. Co.,* 1993 WL 276058 at *2 (S.D.N.Y. July 21, 1993) ("[E]ven if Plaintiffs' claims turn out to be meritless or, in fact all Plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in the case."); *Harper v. Lovett's Buffet, Inc.,* 185 F.R.D. 358, 365 (M.D. Ala. 1999) ("subsequent discovery may reinforce or undermine" the preliminary finding of similarly situated).

21.     Only at the second stage, after discovery and if a defendant seeks decertification, does a court make a "factual determination" as to whether the class members are actually similarly situated. *Mooney,* 54 F.3d at 1214 ("The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.");

*Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) ("[A]fter discovery is largely complete and more information on the case is available, the court makes a final determination of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action."); *Special Distribution Servs.*, 2007 WL 2318478, at *2 (internal citations omitted).

**B. Conditional Certification and Notice are Appropriate Because Similarly Situated Property Tax Consultants Exist Who May Join This Lawsuit**

22.      Plaintiffs easily satisfy the lenient standard for notice to potential opt-in members of this collective action. The detailed Declarations and other evidence submitted in support of this Motion identify at least 177 other Property Tax Consultants who performed the same duties as Plaintiffs and were subjected to the same payroll practices and policies.   Those individuals should be given the opportunity to "opt-in" to this lawsuit to recover compensation unlawfully withheld.

     i.   O'CONNOR & ASSOCIATES ADMITS THAT AT LEAST 177 OTHER PROPERTY TAX CONSULTANTS PERFORMED THE SAME JOB DUTIES AS PLAINTIFFS

23.      Although discovery of this matter is in its early stages, O'Connor & Associates has already admitted that at least 177[4] other Property Tax Consultants performed the same or similar job duties as the named Plaintiffs:[5]

---

[4]      Although Defendants actually provided the contact information for 189 other Property Tax Consultants in response to this Interrogatory, that number includes each of the named Plaintiffs, as well as five other Property Tax Consultants who may not have been working for Defendants during the relevant notice period: November 4, 2008 to present.

[5]      Exhibit 7, Patrick O'Connor & Associates, L.P. d/b/a O'Connor & Associates' Responses to Interrogatories at No. 7.

INTERROGATORY NO. 7:
Identify by name, address, and phone number all employees, employed at any time between October 1, 2008 and present, with the same job duties as Plaintiffs at each of your office locations, including but not limited to the locations listed below.

[Office locations in Houston, Dallas, San Antonio, Los Angeles, Chicago, and Charlotte were identified].

ANSWER:
For specific information responsive to this interrogatory please see information contained in the attachments. However, each person had different job duties many of which were same or similar in part or in whole to the Plaintiffs.

With this Answer, O'Connor & Associates attached a spreadsheet listing the names, hire date, termination date, address, and phone number, for 177 other Property Tax Consultants who worked (or currently work) during the past three years.[6] The first four pages of the Spreadsheet listed the names, positions, and hire dates of each Property Tax Consultant, a sample of which is shown below:[7]

| Name | Position | Hire Date |
|---|---|---|
| Kirk Ward | PTC (Year-Round) | 5/10/1999 |
| Doug Ford | PTC (Year-Round) | 3/6/2000 |
| Clarence Cooper | PTC (Year-Round) | 5/9/2000 |
| Thomas Orsack | PTC (Year-Round) | 4/21/2003 |
| Jason Rodriguez | PTC (Year-Round) | 5/12/2003 |
| Trevor Vallejo | PTC (Year-Round) | 4/19/2004 |
| Sam Sherkawy | PTC (Year-Round) | 4/18/2005 |
| Richy Hem | PTC (Year-Round) | 5/16/2005 |

---

[6]     Exhibit 7, Patrick O'Connor & Associates, L.P. d/b/a O'Connor & Associates' Responses to Interrogatories at Spreadsheet 2.

[7]     *Id.*

The names, positions, and hire dates were followed by other pages listing the termination dates, addresses and phone numbers of the Property Tax Consultants, in the following format:[8]

| Term Date | Address | Phone Number |
|---|---|---|
| Currently employed | 811 Flanners Court Spring, TX 77373 | 281-353-8108 |
| Currently employed | P.O. 430756 Houston, TX 77243 | 713-962-4921 |
| Currently employed | 3619 Maple Pass Ct Katy, TX 77449 | 281-788-9184 |
| 2/9/2009 | 3063 Providence Oak Houston, TX 77084 | 713-408-8980 |
| 1/23/2009 | 1021 Bonner Houston, TX 77007 | 713-348-7182 |
| 9/13/2010 | 2210 W  Dallas #223 Houston, TX 77019 | 979-571-2258 |
| Currently employed | 15006 Changing Oak Cl. Houston, TX 77082 | 832-526-2115 |
| Currently employed | 1427 Stonecrest Houston, TX 77018 | 713-550-4557 |

    ii.  Property Tax Consultants are Subjected to the Same Written Policies, Which Require Working Extended Overtime Hours

24.    In the job description that describes the Property Tax Consultant position, Defendants admit that Property Tax Consultants are expected to work substantial overtime, including workweeks of up to *90 hours*:[9]

"Post-" and "Pre-" Season Activities: . . . During this time of the year, it is anticipated that in order to perform the activities listed, **a work week will average an estimated 40-45 hours per week**.

"Peak" Season Activities: . . . During this time of the year, it is anticipated that in order to perform the activities required, **a work week will average an estimated 60 to 90 hours per week.**

25.    To ensure that Property Tax Consultants were aware that they would be expected to work substantial overtime, Defendants also required Plaintiffs to sign a document entitled "Property Tax Department Expectations" at the beginning of

---

[8]   *See id.*
[9]   Exhibit 9, O'Connor & Associates Property Tax Consultant Job Standards (OCA-Fraser 000877-78) (emphasis added).

their employment.[10] This document required them to agree that (1) any national holidays that occurred during the peak tax season would not be recognized by the Property Tax Department; (2) no time off requests would be granted for any form of vacation; (3) the majority of weekends would have to be worked; and (4) they would have to be available to work evenings and <u>overtime</u>.[11]  This document also required Property Tax Consultants to "agree to comply with the above expectations as long as [they are] an employee of O'Connor & Associates."[12]

26.    Consistent with Defendants' written policies, Plaintiffs and similarly situated Property Tax Consultants regularly worked more than 40 hours in a workweek without being paid overtime as required by the FLSA.[13]

iii.  OTHER EVIDENCE FURTHER ESTABLISHES THAT PLAINTIFFS AND OTHER PROPERTY TAX CONSULTANTS ARE SIMILARLY SITUATED

27.    In their preliminary discovery responses, Defendants' concede that Plaintiffs are similarly situated with respect to their job duties and the compensation structure and payroll policies applicable to them. For example, O'Connor & Associates contends that all of the Plaintiffs were exempt from overtime *because* Plaintiffs performed the same exempt job duties.[14] O'Connor & Associates admits

---

[10]    *See* Exhibit 5.

[11]    Exhibit 5, Plaintiffs' Acknowledgment of Property Tax Department Expectations; *see also* Exhibit 1, Fraser Decl. ¶ 9; Exhibit 2, Malvo Decl. ¶ 9; and Exhibit 3, Smith Decl. ¶ 9.

[12]    Exhibit 5, Plaintiffs' Acknowledgment of Property Tax Department Expectations; *see also* Exhibit 1, Fraser Decl. ¶ 9; Exhibit 2, Malvo Decl. ¶ 9; and Exhibit 3, Smith Decl. ¶ 9.

[13]    Exhibit 1, Fraser Decl. ¶¶ 5-6, 8, 10-11; Exhibit 2, Malvo Decl. ¶¶ 5-6, 8, 10-11; Exhibit 3, Smith Decl. ¶¶ 5-6, 8, 10-11; Exhibit 4, Thompson Decl. ¶¶ 5-6, 8-9; Plaintiffs' Original Collective Action Complaint (Doc. No. 1) ¶¶ 21-22, 28-29.

[14]    Exhibit 7, Interrogatory Responses at Nos. 1, 9.

that it paid Plaintiffs a monthly salary.[15] Furthermore, despite requiring Property

Tax Consultants to work long hour,[16] O'Connor & Associates acknowledges that

(a) Plaintiffs were never paid extra compensation for working more than 40 hours

during any workweek of their employment;[17] (b) Plaintiffs were not paid time and a

half for each hour Plaintiffs worked over 40 hours during any workweek of their

employment;[18] and (c) none of the Plaintiffs has ever received overtime

compensation from O'Connor & Associates since October 1, 2008.[19]

28.      In the attached Declarations of Monique Fraser, Mahlon Smith, and

Cassandra Malvo, they also identify by name 26 other Property Tax Consultants

(most of whom are also identified on Defendants' spreadsheet of similarly situated

Property Tax Consultants) who are potential class members.[20] Each of the specifically-

named individuals (1) performed the same or similar job duties as Plaintiffs; (2)

worked the same or similar long hours as Plaintiffs; (3) was paid the same way

Plaintiffs were paid; and (4) was similarly denied additional compensation for

overtime hours worked.[21] Plaintiffs know these facts because they routinely worked

long hours with the individuals listed in addition to witnessing one another work

extremely long hours, and they regularly shared information about their job duties,

working hours, pay, and the fact that they were not being paid additional

---

[15]      Exhibit 8, Response to Plaintiffs' First Requests for Admission at No. 7.
[16]      *See* Exhibit 9, O'Connor & Associates Property Tax Consultants Job Standards; Exhibit 8 at No. 10
(Defendant Patrick O'Connor & Associates, L.P. admitted that "Plaintiffs were required to work extended
hours during property tax season.").
[17]      Exhibit 8 at No. 5.
[18]      Exhibit 8 at No. 20.
[19]      Exhibit 8 at No. 45.
[20]      *See* Exhibits 1-3 ¶ 11.
[21]      *Id.*

compensation despite working extremely long hours.[22] In fact, the declarations of Plaintiffs Fraser, Smith, and Malvo, as well as opt-in Thompson, explain that they are not aware of any Property Tax Consultant ever being paid overtime.[23]

29.      The attached evidence confirms that, in addition to the seven (7) named Plaintiffs, there is one (1) opt-in Plaintiff,[24] at least twenty-six (26) individuals that performed the same job duties as Plaintiffs and were subjected to the same payroll policies and procedures as Plaintiffs[25] (including three (3) who already want to join this lawsuit),[26] and one hundred and seventy-seven (177) Property Tax Consultants that Defendants identify as performing the same job duties as Plaintiffs.[27] Accordingly, Plaintiffs have exceeded their burden to show a reasonable basis to conditionally certify this collective action and send notice to other Property Tax Consultants to give them the option to opt-in to this collective action.[28]

## C. Plaintiffs Have Met Their Burden of Demonstrating a Reasonable Basis for Collective Action Certification and Notice to Potential Plaintiffs

30.      Collective action certification and notice to the class is warranted here, as Plaintiffs have more than demonstrated a "reasonable basis" for the class allegations. *See Grayson*, 79 F.3d at 1097. First, Plaintiffs provided specific allegations

---

[22]    Exhibits 1-3, ¶¶ 6, 11.

[23]    Exhibits 1-3 ¶ 11; Exhibit 4, Thompson Decl. ¶ 10.

[24]    Exhibit 4, Thompson Decl. ¶¶ 5-10.

[25]    Exhibits 1-3 ¶ 11.

[26]    Exhibit 3 ¶ 12.

[27]    Exhibit 7, Patrick O'Connor & Associates, L.P. d/b/a O'Connor & Associates' Responses to Interrogatories at Spreadsheet 2.

[28]    Indeed, Plaintiffs need only demonstrate "some factual nexus which binds the named Plaintiff and the potential class members together." *Clarke v. Convergys Customer Management Group, Inc.*, 370 F. Supp. 2d 601, 605 (S.D. Tex. 2005) (internal citation omitted).  Here, Plaintiffs have presented evidence of similar job duties, similar pay provisions, as well as a specific practice of refusing to pay overtime, which violates the FLSA.  Accordingly, Plaintiffs easily show a "factual nexus" between themselves and the potential class members.

17

in their Complaint, outlining O'Connor & Associates' violations of the law.[29] Second, Plaintiffs provided evidence that O'Connor & Associates paid Plaintiffs and other residential Property Tax Consultants a salary plus commission, regardless of the number of hours worked in a given workweek.[30] In addition, Plaintiffs have produced evidence that they and other Property Tax Consultants performed the same job duties and regularly worked more than forty (40) hours in a workweek without being paid overtime.[31]

31.     Finally, Plaintiffs have limited their request for notice to those Property Tax Consultants currently or formerly employed by O'Connor & Associates who: (1) provided property tax reduction services to residential homeowners; (2) were paid a salary plus commission based on production; and (3) worked more than forty (40) hours per week at any time between November 4, 2008 and present, so that the notice reasonably will reach employees who may be similarly situated to the named Plaintiffs. Plaintiffs do not seek, for example, to send notice to Property Tax Consultants who worked on commercial matters, or even to other office or general administrative employees.

32.     Plaintiffs' detailed allegations supported by signed declarations, O'Connor & Associates' preliminary discovery responses, and other evidence, more than satisfy the "lenient" standard for collective action notice. *Mooney,* 54 F.3d at

---

[29]    *See* Plaintiffs' Original Collective Action Complaint (Doc. No. 1) ¶¶ 19, 21-24, 28-34.

[30]    *See e.g.,* Exhibits 1-3 ¶¶ 5-7, 10-11; Exhibit 4, Thompson Decl. ¶¶ 5-7, 9-10; Exhibit 7, Responses to Interrogatories at Nos. 1, 9, and attached spreadsheet; Exhibit 8, Responses to Plaintiffs' First Requests for Admission at Nos. 7, 10.

[31]    *See e.g.,* Exhibits 1-3 ¶¶ 5-6, 8, 10-11; Exhibit 4, Thompson Decl. ¶¶ 5-6, 8-10; Exhibit 7, Responses to Interrogatories at Nos. 1, 7, and attached Spreadsheet 2; Exhibit 8, Responses to Plaintiffs' First Requests for Admission at Nos. 5, 10, 20, 45.

1213-14; *Clarke,* 370 F. Supp. 2d at 604; *Vargas*, 2010 WL 730155, at \*3. Plaintiffs have shown that O'Connor & Associates' company policies compelled Property Tax Consultants to work overtime and that O'Connor & Associates refused to compensate them for these overtime hours worked at the required rate of one and one-half times their regular rate. The evidence demonstrates that these Property Tax Consultants are similarly situated *and* subject to a uniform payroll policy.

33.     The quantum of this evidence is significantly more than the evidence found sufficient to warrant notice by courts in the Southern District of Texas and other courts. *See, e.g., Villatoro v. Kim Son Rest., L.P.,* 286 F. Supp. 2d 807, 810-11 (S.D. Tex. 2003) (Atlas, J.**)** (one declaration plus employer documents sufficient); *Gardner v. Assoc. Commercial Corp.,* Civil Action No. H-00-3889 (S.D. Tex. Dec. 20, 2000) (Harmon, J.) (detailed allegations sufficient); *Special Distribution Servs.,* 2007 WL 2318478, at \*2 (Harmon, J.) (allegations in motion for notice supported by one affidavit identifying other potential class members sufficient); *Schwartz v. MCI Telecomms. Corp.,* No. H-98-1574 (S.D. Tex. Feb. 19, 1999) (Werlein, J.) (one declaration sufficient); *Bursell v. Tommy's Seafood Steakhouse*, No. H-06-0386, 2006 WL 3227334, at \*2 (S.D. Tex. Nov. 3, 2006 (Rosenthal, J.) (two declarations sufficient); *Shaffner v. Cash Register Sales & Service of Houston, Inc.*, No. H-05-2064, 2006 WL 1007542, at \*1 (S.D. Tex. April 17, 2006) (Ellison, J.) (three declarations sufficient and court notes addition of opt-in plaintiffs after inception of case is persuasive).[32]

---

[32]    *See also Zhao v. Benihana, Inc.*, No. 01-CV-1297, 2001 WL 845000, at \*2 (S.D.N.Y. May 7, 2001) (one declaration based on the employee's "best knowledge" sufficient); *Brown v. Money Tree, Wong. Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004) (two affidavits); *Williams v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483, 487

34.     Accordingly, Plaintiffs' evidence more than justifies conditional certification of this collective action and authorization for notice to Property Tax Consultants who worked at O'Connor & Associates during the last three years providing property tax reduction services to residential homeowners. *See, e.g., Clarke,* 370 F. Supp. 2d at 606 (conditionally certifying class of employees and noting, "[m]ost importantly, all of the workers in the potential class are alleged to have been subjected to the same unlawful practices").

**D.  Notice Should be Expedited Due to the Running of the Statute of Limitations**

35.     Notice to the class should be expedited in this action in order to prevent the wasting of the Property Tax Consultants' claims. The Property Tax Consultants' claims are governed by a two year statute of limitations or, in the case of a "willful violation," a three year statute of limitations. *See* 29 U.S.C. § 256(a). The statute of limitations is generally not tolled for any individual class member until that individual has filed with the Court a written consent to join the lawsuit. *See* 29 C.F.R. § 790.021(b)(2); *Grayson,* 79 F.3d at 1105-06. Consequently, the statute of limitations is potentially diminishing the value of these employees' claims with each passing day.

36.     The information contained in the proposed notice should therefore be issued as soon as possible to allow these salary-plus-commission employees to act to

---

(D. Kan. 2004) (allegations in complaint were "more than sufficient to support provisional certification"); *Allen v. Marshall Field & Co.,* 93 F.R.D. 438, 442-45 (N.D. Ill. 1982) (allegations in complaint sufficient); *Camper v. Home Duality Mgmt., Inc.,* 200 F.R.D. 516, 519-21 (D. Md. 2000) (sworn testimony from two deponents and two declarations); *Aguayo v. Oldenkamp Trucking,* No. CV-F-04-6297, 2005 WL 2436477, at *4 (E.D. Cal. Oct. 3, 2005) (allegations in complaint and declaration of single plaintiff demonstrated plaintiff and other class members are similarly situated).

protect their interests. (*See* Exhibit 11, Proposed Notice to Property Tax Consultants). Without notice, they are unaware of their right to opt in, and they are powerless to prevent their claims from wasting away. Moreover, because some of the potential class members no longer work for O'Connor & Associates, their whereabouts will be increasingly difficult to trace and evidence may be lost with the passing of time. Therefore, notice should be expedited in this action to the maximum extent feasible, and should be sent to all "similarly situated" employees employed during the maximum three year potential liability period. *Villarreal*, 751 F. Supp. 2d at 919 n.101 (ordering notice to employees within the maximum three year statute of limitations).

### E. The Proposed Notice is Fair and Adequate

37. A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-Laroche,* 493 U.S. at 170. Use of court-authorized notice also prevents "misleading communications." *Id.* at 172; *Garner,* 802 F. Supp. at 422.

38. Plaintiffs' proposed court-approved notice to the potential opt-ins (Exhibit 11, Proposed Notice to Property Tax Consultants) is "timely, accurate, and informative," as required. *Hoffmann-LaRoche,* 493 U.S. at 172. It provides notice of the pendency of the action and of the opportunity to opt in. Plaintiffs' legal claims are accurately described. Potential opt-ins are advised that they are not required to participate. Plaintiffs' counsel will oversee the mailing of such notice and incur the charges for same (postage, copying, etc.). Those class members interested in

21

participating would be required to return their consents to Plaintiffs' counsel for filing within 60 days of the mailing – at a date certain set by the Court. This is consistent with established practice under the FLSA. *Hoffmann-LaRoche,* 493 U.S. at 172; *Garner,* 802 F. Supp. at 422 (explaining that a cut-off date expedites resolution of action).

**F.  The Proposed Limited Discovery is Essential to Ensure Timely Notice**

39.     Discovery of a mailing list and contact information for class members is a routine component of notice in collective actions. *See, e.g., Tolentino v. C&J Spec-Rent Services Inc.*, 716 F.Supp.2d 642, 646-47 (S.D. Tex. 2010) (Jack, J.) ("Court also orders that Defendant produce…the names, addresses, phone numbers, and e-mail addresses . . . ."); *Johnson,* 319 F. Supp. 2d at 755 (Werlein, J.) (ordering defendants to produce the names and last known addresses of similarly situated employees based on affidavits and policies showing they were victims of a common policy violating the FLSA); *Alba*, 2002 WL 32639827, at *1 (Hoyt, J.) (ordering defendant to produce the full name, last known address, telephone numbers, dates and location of employment for three years). Indeed, such a mailing list is essential to the timely notice. *Hoffmann-LaRoche,* 493 U.S. at 170 (explaining that the district court was correct to permit discovery of the names and addresses).

40.     As previously mentioned, O'Connor & Associates has already produced a spreadsheet containing the names, last known address, and phone number for Property Tax Consultants who performed the same job duties as

22

Plaintiffs within the last three years (i.e., November 4, 2008 to present).[33] However, some of the hire dates were a later date than the terminate dates listed for many individuals, and there appeared to be other errors in the information.

41.     Given these errors, Plaintiffs request that Defendants be obligated to re-produce the contact information of potential opt-in plaintiffs to Plaintiffs, along with the social security numbers, dates of birth, and personal email addresses, to provide Plaintiffs with sufficient information to locate those persons who may have moved from their last known addresses. Plaintiffs request that this information be produced electronically, either in an Excel spreadsheet or a Word table, to avoid any errors or omissions in the information. Without these precautions, the notices are more likely to be returned due to outdated or inaccurate addresses. This, in turn, would result in Plaintiffs' counsel requesting an extension of the opt-in period to accommodate those class members, thereby further delaying the timely resolution of this matter.

42.     Moreover, Defendants' designated representative should be required to execute a declaration in the form attached hereto as Exhibit 10 stating under oath what efforts were taken to make sure the list is complete and accurate so as to subject the declarant to the penalty of perjury should the list turn out to be incomplete. In cases involving hundreds of potential opt-ins, certain employees or information are inevitably "omitted" from the lists either intentionally or mistakenly due to inadequate time spent locating the information. Requiring a declaration

---

[33]     *See* Exhibit 7, Spreadsheet 2 attached to Interrogatory Responses.

encourages Defendants to ensure they have performed a thorough search for all included potential opt-in Plaintiffs.

## IV.
## CONCLUSION

For the foregoing reasons, Plaintiffs seek an order that:

1) Conditionally certifies this action as a collective action;

2) Requires Defendants to immediately produce the name, address, dates of employment, telephone number, personal email address, date of birth, and social security number for each person who: (1) is currently or formerly employed by Defendants (and any assumed names or affiliated companies) as a Property Tax Consultant; and (2) provided property tax reduction services to residential homeowners at any time from November 4, 2008 to present; and (3) was paid a salary plus commission based on production. This information should be produced to Plaintiffs electronically, such as in an Excel spreadsheet or a Word table, to ensure the legibility of the information;

3) Requires Defendants to execute a declaration (Exhibit 10) regarding accuracy of contact information for potential opt-in plaintiffs; and

4) Authorizes mailing of the proposed notice and consent form (Exhibits 11 and 12) to all Property Tax Consultants currently or formerly employed by Patrick O'Connor & Associates, L.P. and O'Connor Management, L.L.C. (and any other assumed names or affiliated entities of these two companies) who:

   a) Provided property tax reduction services to residential homeowners at any time between November 4, 2008 and present; and

   b) Were paid a salary plus commission based on production.

Respectfully submitted,

MIZE, MINCES & CLARK, PC

By:/s/ David G. Clark
      **David G. Clark**
      Attorney-in-Charge
      Federal I.D. No.: 36880
      State Bar No.: 24040698
      Email: david.clark@mizeminces.com
      808 Travis Street, Suite 453
      Houston, Texas 77002
      Telephone: (713) 595-9675
      Facsimile: (713) 595-9670

**ATTORNEYS FOR PLAINTIFFS**

OF COUNSEL:

**Katherine T. Mize**
Federal I.D. No.: 15523
State Bar No.: 00784617
Email: katherine.mize@mizeminces.com
**David M. Minces**
Federal I.D. No.: 435389
State Bar No.: 24026880
Email:  david.minces@mizeminces.com

**MIZE, MINCES & CLARK, PC**
808 Travis Street, Suite 453
Houston, Texas 77002
Telephone: (713) 595-9675
Facsimile: (713) 595-9670

25

## CERTIFICATE OF CONFERENCE

I have conferred with Hugh McKenney, counsel for Defendants, on several occasions regarding the relief requested in this motion. Mr. McKenney has explained that Defendants intend to oppose the relief requested in this motion.

/s/ David G. Clark
David G. Clark

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing was on this date automatically accomplished on all known Filing Users through the Notice of Electronic Filing. Service on any party or counsel who is not a Filing User was accomplished via certified mail – return receipt requested, in accordance with the Federal Rules of Civil Procedure on March 29, 2012:

Hugh L. McKenney
McKenney & Associates, P.C.
2200 North Loop West, Suite 333
 Houston, Texas 77018

/s/ David G. Clark
David G. Clark
