IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

```
MONIQUE FRASER, CASSANDRA MALVO, §
TANYA AUSTIN, WINSTED FRASER,    §
LIONEL ALARCON, CHRISTIAN        §
FOSTER, MAHLON SMITH, and        §
CAROLYN THOMPSON, On Behalf of   §
Themselves and Others Similarly  §
Situated,                        §
                                 §
                Plaintiffs,      §
                                 §
VS.                              §    CIVIL ACTION H-11-3890
                                 §
PATRICK O'CONNOR & ASSOCIATES,   §
L.P. D/B/A O'CONNOR &            §
ASSOCIATES, O'CONNOR MANAGEMENT, §
L.L.C., PATRICK O'CONNOR,        §
KATHLEEN O'CONNOR, AND MIKE      §
WEBB,                            §
                                 §
                Defendants.      §
```

## OPINION AND ORDER

Pending before the Court in the above referenced, proposed collective action brought under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, by some Property Tax Consultants formerly employed by Defendant O'Connor & Associates seeking to recover unpaid overtime wages and an amount equal to all unpaid overtime wages as liquidated damages under 29 U.S.C. § 216,[1]

---

[1] Section 216 provides in relevant part, "Any employer who violates the provisions of section 206 or section 207 of this Act shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." An award of liquidated damages is within the court's sound discretion under 29 U.S.C. § 260 ("In any action . . . to recover . . . unpaid overtime compensation, or liquidated damages, under the [FLSA], if the

are three motions:  (1) Defendants Patrick O'Connor & Associates, L.P. d/b/a O'Connor & Associates, O'Connor Management, L.L.C., and Patrick C. O'Connor's Rule 12 motions, combined with their Answer to the Original Complaint (instrument #8); (2) Plaintiffs Monique Fraser, Cassandra Malvo, Tanya Austin, Winsted Fraser, Lionel Alarcon, Christian Foster, Mahlon Smith, and Carolyn Thompson's motion for class notice and for limited discovery (#13); and Defendants' motion for continuance and request for oral hearing (#14).

Defendants initially asserted several challenges under Rule 12.  First they sought dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted against Defendant O'Connor Management, LLC because there are no allegations against that entity in Plaintiffs' original pleading.  Second, Defendants sought dismissal for lack of subject matter jurisdiction.  Although Plaintiffs claim they were

---

employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith *and* that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section [216]."). Thus "an employer found liable under section 206 or 207 of the FLSA has a 'substantial burden' of proving to the satisfaction of the trial court both that its acts giving rise to the employees' suit were in good faith and that it had reasonable grounds for believing it was not violating the FLSA." *Tryco Enterprises, Inc. v. Robinson*, __ S.W. 3d ___, No. -1-10-00710-CV, 2012 WL 4021126, *14 (Tex. App.-- Houston [1st Dist.] Sept. 13, 2012), *citing Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990).

employed by two entities, Defendants assert they were employed by only one, if at all, and maintain that Plaintiffs have failed to plead a case against O'Connor Management, LLC and Patrick O'Connor. Third, Defendants moved for a more definite statement and request the Court to order Plaintiffs to re-plead with specificity the terms of employment and particular allegations of the violation of statute or the Court should strike the pleading.

Since the Rule 12 motions were filed, Plaintiffs have filed a First Amended Collective Action Complaint (#23).   T h e   F i r s t Amended Complaint asserts two causes of action:  (1) violations of the FLSA in failing to pay Plaintiffs and other Property Tax Consultants overtime wages for the three years before suit was filed and (2) violation of the Texas Uniform Fraudulent Conveyance Act, Texas Business and Commerce Code § 24.001, *et seq.*, in Defendants' creation of two new entities only after Plaintiffs moved for class certification, i.e., Property Tax Advantage LLC and Novice Properties LLC, the former solely in Kathleen O'Connor's name, which "Plaintiffs contend that Defendants intend to use . . . as a means of avoiding the effect of any judgment issued in this case."  #23 at p. 12.  Defendants have not filed new objections to the new complaint, which cures some of Defendants' original objections, as indicated below.  The Court discusses the first two motions together.

As a threshold matter, regarding Defendants' contention that

Plaintiffs should be required to replead with specificity the terms of employment and particular allegations of the violation of statute, the requirements for pleading a collective FLSA action are not the same as those generally applicable at the start of a suit under Rule 12(b)(6).

The FLSA requires that a nonexempt, covered employee be paid one-and-one-half times the hourly rate for hours worked beyond 40 hours in a work week.  29 U.S.C. 207(a)(1).  The central issue in this lawsuit is whether the Property Tax Consultants at O'Connor & Associates are exempt from overtime under the FLSA as executive, administrative, or professional employees.  Under Section 13(a) of the FLSA, 19 U.S.C. § 213(a)(1), the minimum and maximum hour provisions of the FLSA do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." The employer bears the burden of proving such an exemption.  *Samson v. Apollo Resources, Inc.*, 242 F.23d 629, 636 (5th Cir. 2001).[2]  To

---

[2] Thus at this stage of the litigation, Plaintiffs need not plead facts proving they are not administrative or executive employees.   Exemptions for executive, administrative and professional employees under 29 U.S.C. § 213(a)(1) are narrowly construed against the employer, which bears the burden of proving such an exemption.  *Gellhaus v. Wal-Mart Stores, Inc.*, 769 F. Supp. 2d 1071, 1077 (E.D. Tex. 2011), *citing Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002).

The Fifth Circuit follows a three-step approach in determining whether an employee is exempt.  *Id.*  First the fact finder makes findings of historical fact about the nature and terms of the employment.  *Id., citing Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006).  Second, the factfinder draws inferences from the historical facts and applies the regulations and interpretations under § 213(a)(1).  *Id., citing id.* at 585 and

*Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990).  Third, "'the ultimate determination of whether an employer qualifies for an exemption under the FLSA is a question of law' for the court to decide." *Id., citing Singer v. Dillon Res., Inc.*, 324 F.3d 813, 818 (5th Cir. 2003).  That final determination, however, is based on numerous factual determinations that can be resolved by a jury. *Id., citing id.*

Under the federal regulations currently governing FLSA exemptions, 29 C.F.R. §§ 541.100-.300 (2004), "[t]o qualify for an exemption under the FLSA, the employee's primary duty must be the performance of exempt work." *Id.* at 1078*, citing* § 541.700(a). "Primary duty" is defined as "the principal, main, major, or most important duty that the employee performs," in view of all the facts in the case and with the focus on the employee's job as a whole. *Id., citing Rainey v. McWane Inc.*, 314 Fed. Appx. 693, 695 (5th Cir. 2009), and *Aguirre v. SBC Communications, Inc.*, No. H-05-3198, 2007 WL 2900577, *17-18 (S.D. Tex. 2007), *aff'd*, 299 Fed. Appx. 315 (5th Cir. 2008).  Among factors the court may consider are "'the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.'"  *Id., citing* 29 C.F.R. § 541.700(a); *Rainey*, 314 Fed. Appx. at 695; *Aguirre*, 2007 WL 2900577 at *18.   Generally an employee spending more that fifty percent of his time performing exempt work will satisfy the primary duty requirement, but an employee spending less may still qualify if other factors support the same conclusion.  *Id.*  An employee's primary duty is not determined by time alone; it is what the employee does "'that is of principal value to the employer, not the collateral tasks she may also perform even if they consume more than half her time.'"  *Id.* at 2078-79, *citing Mims v. Starbucks Corp.*, No. H-05-0791, 2007 WL 10369, *3-4 (S.D. Tex. Jan. 2, 2007)   To define an employee's principal duty, the court examines "'the actual day-to-day job activities of the employee'" and "'not the labels the employee or the employer place[s] on those duties.'"  *Chicca v. St. Luke's Episcopal Health System*, ____ F. Supp. 2d ____, Civ. A. No. H-10-2990, 2012 WL 844899, *4 (S.D. Tex. Mar. 12, 2012), *quoting Kohl v. Woodlands Fire Dept.*, 440 F. Supp. 2d 626, 634 (S.D. Tex. 2006), *citing Tyler*, 304 F.3d at 404.  To determine the employee's actual day-to-day job duties, the court may look at general job descriptions in an employee's resume or employer's description, which are not determinative, or descriptions in depositions and affidavits.  *Id.*  "Ultimately, 'the inquiry into exempt status under [Section 13(a) of FLSA] remains intensely fact bound and case

qualify for such a exemption, the employee must (1) be compensated at a salary of at least $455 per week, (2) have a primary duty of performing "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers,"[3] and (3) have a primary duty that includes "the exercise of discretion and independent judgment with respect to matters of significance."[4]   29 C.F.R. § 541.200.   *See, e.g.,*

---

specific'" and "'[e]ach case must be judged on its own peculiar facts.'"   *Id., quoting Dalheim*, 918 F.2d at 1226-27.

[3]  In other words, the "employee must perform work that directly relates to assisting with the running or service of the business, as opposed to work on a manufacturing production line or selling a product in a retail or service establishment."  *Chicca*, 2012 WL 844899. at *9, *citing* 29 C.F.R. § 541.202.

[4]  This prong "'involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.   The term 'matters of significance' refers to the level of importance or consequence of the work performed."  *Chicca*, 2012 WL 844899. at *9, *citing* 29 C.F.R. § 541.202(a).   The district judge in *Chicca* noted that the regulations provide a non-exhaustive list of factors to consider, including the following:

> *   whether the employee has authority to formulate, affect, interpret, or implement management policies or operation practices;
>
> * whether the employee carries out major assignments in conducting the operations of the business;
>
> * whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are relation to operation of a particular segment of the business;
>
> * whether the employee has authority to commit the employer in matters that have significant financial impact;

*Chicca v. St. Luke's*, 2012 WL 844899, at *8.   Defendants here
maintain that Plaintiffs are exempt from the overtime provisions of
the FLSA under the Administrative Employee exemption defined in
SubChapter C, Sections 541.200-541.203.

> Moreover under 29 U.S.C. § 216(b),
>
> An action . . . may be maintained against any employer .
> . . by one or more employees for and in behalf of himself
> or themselves and other employees similarly situated.  No
> employee shall be a party plaintiff to any such action
> unless he gives his consent in writing to become such a
> party and such consent is filed in the court in which
> such actions is brought.

This affirmative "opt-in" requirement distinguishes a collective
action under the FLSA from a traditional class action under Federal
Rule of Civil Procedure 23, from which persons within the class
description must "opt out" or they are automatically class members.
*LaChappelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir.

---

> * whether the employee has authority to waive or deviate
> from established policies and procedures without prior
> approval;
>
> * whether the employee provides consultation or expert
> advice to management;
>
> *whether the employee is involved in planning long- or
> short-term business objectives; and
>
> * whether the employee investigates and resolves matters
> of significance on behalf of management.

*Id., citing* 29 C.F.R. § 541.202(b).   "'[E]mployees who merely
follow prescribed procedures or who determine whether specified
standards are met, such as inspectors or graders,' are not
exempted." *Id., citing Bondy v. City of Dallas*, 77 Fed. Appx. 731,
733 (5th Cir. 2003)(citing 29 C.F.R. § 541.207(c)),

1975); *Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008).   District courts have substantial discretion in determining whether to authorize notice to similarly situated employees advising them of their right to opt in to a FLSA collective action.   *Hoffman-La Roche, Inc. v. Sperling*, 439 U.S. 165, 170-71 (1989).   Before notice may issue, the court must conditionally certify the action as a collective action; the 90-day opt-in period begins when the district court approves the form of notice proposed by the plaintiffs.   *Flowers v. MGTI, LLC*, Civ. A. No. H-11-1235, 2012 WL 1941755, *1 (S.D. Tex. May 29, 2012).   The court "has the power to modify an FLSA collective action definition on its own," including limiting the scope of the proposed collective action.   *Vanzzini v. Action Meat Distributors, Inc.*, Civ. A. No. H-11-4173, 2012 WL 1941763, *2 (S.D. Tex. May 29, 2012), *citing Dreyer v. Baker Hughes Oilfield Operations, Inc.*, Civ. A. No. H-08-1212, 2008 WL 5204149, *3 (S.D. Tex. Dec. 11, 2008)(*citing Baldridge v. SBC Communications, Inc.*, 404 F.3d 930, 931-32 (5th Cir. 2005)).

Plaintiffs here seek certification of a putative class of Property Tax Consultants working for O'Connor & Associates (1) to help residential homeowners protest property value appraisals to reduce their property taxes, (2) who were paid a salary plus commission based on production, and (3) who worked more than forty hours per week at any time between November 4, 2008 to the present.

They state that the number of members may reach 200 and ask the Court for authorization to notify them about this collective action.

Courts recognize two methods to decide whether to authorize notice to similarly situated employees, i.e., the "spurious class action" approach under *Shushan v. University of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990)(using numerosity, commonality, typicality, and adequacy of representation analysis for class certification, as under Rule 23), or the two-step approach under *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)(comprised of the initial "notice stage," when the court examines pleadings and any other evidence to determine if authorizing notice to potential class members is justified, and if so, the second, "de-certification stage," usually following discovery, when the court determines if the class is still composed of similarly situated plaintiffs).  The Fifth Circuit has not ruled on the method of determining whether plaintiffs are sufficiently "similarly situated" to pursue a collective action.  *Acevedo v. Allsup's Convenience Stores*, 600 F.3d 516, 518-19 & n.1 (5th Cir. 2010), *citing  Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995), *overruled on other grounds recognized by Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 311 n.10 (5th Cir. 2004).  Nevertheless most courts in this district have applied the *Lusardi* approach.  *See, e.g., Villareal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d

902, 915 (S.D. Tex. 2010), *citing Tolentino v. C&J Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642, 646-47 (S.D. Tex. 2010)(collecting cases).

In the initial "notice" stage of *Lusardi*, the named plaintiffs need only make a "minimal showing" that putative class members are "similarly situated" to the plaintiff with respect to the claims, usually based only on the pleadings and the affidavits that have been submitted. *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010). Because the court generally has minimal evidence, the court applies a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Mooney*, 54 F.3d at 1214 & n.8. There must be some factual nexus that binds the named plaintiffs and potential class members as victims of such an alleged policy or practice. *McKnight*, 756 F. Supp. 2d at 801. If the action arises from circumstances particular to the plaintiff, and not from the employer's rule, policy or practice, the court may deny the right to proceed collectively. *Id.* The positions of potential class members do not have to be identical, but only similar in job requirements and pay provisions. *Tolentino*, 716 F. Supp. 2d at 650. Typically the court conditionally certifies a class because of the lenient standard. *McKnight*, 756 F. Supp. 2d at 801. "Collective actions under the FLSA are generally favored because such allegations

reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding [all] 'common issues of law and fact arising from the same alleged . . . activity.'" *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 823 (N.D. Tex. 2007), *quoting Hoffmann-La Roche*, 493 U.S. at 170.

If the court finds the employees are "similarly situated," notice to the potential class is authorized and new plaintiffs may "opt in" to the suit. *Acevedo*, 600 F.3d at 519. The action then proceeds as a collective action with discovery to provide more information until the second stage, when the defendant generally moves to "decertify" the conditionally certified class and the court makes a final determination whether the plaintiffs are similarly situated and can proceed in one action. *Id.* Applying more stringent standards, the court examines three factors in determining whether to allow the suit to go forward as a class action: (1) the extent to which employment settings are similar or disparate; (2) the extent to which any of the employer's defenses are common or individuated; and (2) fairness and procedural concerns. *Mooney*, 54 F.3d at 1214. If the court finds the class members are "similarly situated," the collective action may go forward; if not, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs may proceed with their individual claims. *Vanzzini v. Action Meat Distributors, Inc.*, Civ. A. No. H-11-4173, 2012 WL 1941763, *2 (S.D. Tex. May 29,

2012), *citing inter alia Mooney*, 54 F.3d at 1214.

Here the Court finds that Plaintiffs have met their initial burden of showing there is a reasonable basis for assuming other Property Tax Consultants in their defined class are similarly situated and have similar job requirements. Plaintiffs have identified such employees who did not receive overtime pay for hours worked in excess of 40 hours in a work week and submitted affidavits, have shown through documentary evidence a common policy and practice regarding payment by Defendants, and have identified others wishing to opt in

In the first Amended Complaint, seemingly in response to some of Defendants' Rule 12 motions, Plaintiffs have clarified the relationship among the Defendants.  According to the amended pleading, Patrick O'Connor & Associates does business as O'Connor & Associates,[5] which employed Plaintiffs, allegedly nonexempt employees under the FLSA, during the three years prior to the filing of this lawsuit,[6] and which paid them a monthly salary plus

_____

[5] O'Connor & Associates is a real estate service company that, *inter alia*, offers a property tax reduction service to its clients that includes helping residential homeowners protest property values to reduce property taxes.

[6] The FLSA statute of limitations is two years for non-willful violations and three years for willful violations.  29 U.S.C. § 255(a).  In a FLSA collective action, the statute for a named plaintiff runs from the date the plaintiff files the complaint, but for an opt-in plaintiff, it runs from the opt-in date when that person files a written consent to join the lawsuit.  *Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008), *citing Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir.

commission, but not overtime, even though O'Connor & Associates purportedly knew that the Property Tax Consultants worked more than 40 hours per work week and, indeed, were required to work extended hours during the "peak" property tax season,[7] often up to ninety hours a week.   The First Amended Complaint also charges that although the FLSA requires covered employers to keep records of the hours worked and wages earned by each non-exempt worker, 25 C.F.R. § 516.2(a)(7), except for one 28-day period in November 2009 Defendants admit that they failed to do so.   Furthermore Patrick O'Connor & Associates d/b/a O'Connor & Associates is a limited partnership headquartered in Houston, Texas.   O'Connor Management, L.L.C. is a Texas Limited Liability Company, also headquartered in Houston, and it is the general partner of Patrick O'Connor & Associates d/b/a O'Connor & Associates.[8]   Patrick O'Connor is

---

1983); 29 U.S.C. § 790.021(b)(2).

It is the Plaintiff's burden to prove the violation is willful. *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003).   The test is whether "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Singer*, 324 F.3d at 821.   "Because willfulness is a question of fact, summary judgment in favor of the employer is inappropriate if the plaintiff has introduced evidence sufficient to support a finding of 'wilfulness.'" *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009).

[7] Plaintiffs represent that the peak season begins around April-May and continues until the end of the year.

[8] In a limited partnership, the general partner is always liable for the debts and obligations of the partnership.   Tex. Bus. Orgs. Code Ann. § 153.152; *Asshauer v. Wells Fargo Foothill*, 263 S.W. 3d 468, 474 (Tex. App.--Dallas 2008, pet. denied).

President and owner of O'Connor & Associates and allegedly
"exercised managerial responsibilities and operational control over
O'Connor & Associates, including with regard to the terms and
conditions of Plaintiffs' (and other putative plaintiffs') work for
Defendants," was "involved in creating and establishing the
compensation structure applicable to all Property Tax Consultants,"
and "approved general compensation and payroll policies for
O'Connor & Associates."   According to the complaint, Kathleen
O'Connor, Chief Financial Officer and part owner of O'Connor &
Associates and wife of Patrick O'Connor, was responsible for
managing its financial operations, monitoring and reviewing all its
expenditures, developing financial policies and procedures, and
overseeing all payroll functions and finalizing and implementing
changes to payroll during the employment of Plaintiffs. Mike Webb,
Director of Human Resources at O'Connor & Associates, participated
in creating and approving the compensation structure for the
Property Tax Consultants, exercised managerial responsibilities
including the terms and conditions of Plaintiffs' work, and
exercised operation control over the manner in which they were
paid.  The complaint asserts that as owners and corporate officers
of O'Connor & Associates, Patrick O'Connor, Kathleen O'Connor and
Mike Webb (collectively, "Individual Defendants") are each
considered to be an "employer" under the FLSA, 29 U.S.C. §
203(a)("'Person' means an individual, partnership, association,

corporation, business trust, legal representative, or any organized group of persons.") and (d)("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."), and are jointly and severally liable for the statutory violations.

The Court would point out that to be bound by the FLSA's requirements, one must be an "employer" within the meaning of the statute. *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984)(*citing* § 203(d)), *cert. denied*, 471 U.S. 1124 (1985). The FLSA's definition of "employer" is "sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis employees." *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993). An individual qualifies as an employer "if he independently exercise[s] control over the work situation." *Donovan*, 747 F.2d at 792. The statute's definition reflects that it "contemplates the possibility of multiple employers" at the same time, i.e., that an "individual may be the employee of two or more employers as the same time." *Iztep v. Target Corp.*, 543 F. Supp. 2d 646, 652 (W.D. Tex. 2008); *see also Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 196 (5th Cir.)(opining that an individual deemed an "employer" under the FLSA may be enjoined along with the corporate employer), *cert.*

-15-

*denied*, 463 U.S. 1207 (1983).  To determine if an individual is an "employer" under the FLSA, the court applies a test based on the economic reality of the working relationship by considering four factors:  (1) whether the individual has the power to hire and fire the employee; (2) whether he supervised and controlled the employee's work schedule or conditions of employment; (3) whether he determined the rate and method of payment for the hours worked; and (4) whether he maintained employment records.  *Williams v. Henagan*, 595 F. 3d 610. 621 (5th Cir. 2010).  In determining whether there are joint employers or just one, the court considers several questions, with no one being determinative:  (1) whether the employment takes place on the premises of the company; (2) how much control does the person exert over the employees; (3) does the person have the power to fire, hire or modify the employment conditions of the employees; (4) do the employees perform a 'specialty job' within the production line; and (5) may the employees refuse to work for the company or work for others?" *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669 (5th Cir. 1968). An individual who is found to be an employer under the FLSA "may be held jointly and severally liable for damages resulting from" violations of the FLSA.  *Lee v. Coahoma County, Miss.*, 937 F.2d 220, 226 (5th Cir. 1991).  Where questions exist as to whether a defendant was an employer or a joint employer of the plaintiffs, plaintiffs allegations are sufficient for conditional class

certification to be granted. *See, e.g., Lang v. DirecTV, Inc.*, 2011 WL 6934607, *3 & n.15 (E.D. La. Dec. 30, 2011)("Although courts have later decertified actions because of employment relationship questions, this does not alter the present burden at the conditional certification stage considered here."); *McKnight*. 756 F. Supp. 2d at 806.

The Court finds that the First Amended Complaint, along with the declarations and documents filed by Plaintiffs in support of their motion for class notice (#13), gives adequate notice of Plaintiffs' overtime claims under the FLSA at this stage of the litigation.

Nevertheless, Plaintiffs have not alleged facts that show their claim under the Texas Uniform Fraudulent Conveyance Act, Texas Business and Commerce Code § 24.001, *et seq.*, is ripe and not merely speculative, nor have they satisfied Rule 12(b)(6)'s plausibility pleading standard. Whether they must also satisfy Rule 9(b)'s heightened particularity standard is uncertain. The Fifth Circuit has not determined whether Rule 9(b) applies to the Texas UFTA, and some courts in other states have held that in does not apply to the UFTA in their states on the grounds that the fraud prohibited by the statute in fraudulent transfers is different from the actual and constructive fraud to which Rule 9(b) applies, while others have found 9(b) is applicable. *Indiana Bell Telephone Co., Inc. V. Lovelady*, No. SA-05-CA-285-RF, 2006 WL 485305, *1 & nn. 5,

7-8, and 10 (W.D. Tex. Jan. 11, 2006)(ultimately deciding that Rule 9(b) applies), *citing China Resource Products (U.S.A.) Ltd. v. Fayda Int'l, Inc.*, 788 F. Supp. 815, 819 (D. Del. 1992). Regardless, the Court finds that Plaintiffs must supplement their complaint with appropriate facts if they wish to pursue this claim.

**Plaintiffs' Motion for Class Notice and Limited Discovery (#13)**

Plaintiffs claim that O'Connor & Associates has acknowledged employing more that 177 similarly situated Property Tax Consultants within the last three years with the same job duties as the seven named Plaintiffs and subject to the same unlawful compensation structure and payroll practices, and that it has provided a spreadsheet with their names, addresses and phone numbers.  29 U.S.C. § 207(a) and 29 C.F.R. §§ 778.113, 778.117.  #13, Ex. 7, Interrogatory Responses at No. 7 and attached Spreadsheet 2). O'Connor & Associates argues that the Property Tax Consultants are not entitled to overtime, so there is no dispute that they were not paid overtime.  They seek to send notice to the putative class, i.e., "all Property Tax Consultants currently and formerly employed by O'Connor & Associates who:  (1) provided property tax reduction services to residential homeowners; (2) were paid a salary plus commission based on production; and (3) worked more than forty (40) hours per week at any time between November 4, 2008 and present." #13 at p.4.

Among other evidence of similarly situated Property Tax

Consultants who may opt in, Plaintiffs provide declarations from three of the seven named Plaintiffs (Monique Fraser, Cassandra Malvo, and Mahlon Smith) that identify twenty-six other potential class members[9] who performed the same job duties, worked the same hours, were similarly compensated, and were similarly denied overtime pay; the declaration of Carolyn Thompson, who has already filed a Notice of Consent to join as an opt-in Plaintiff and who stated that she had the same job duties, working hours and compensation structure as Plaintiffs and other Property Tex Consultants and was similarly denied overtime pay; and the spreadsheet produced by Defendants identifying 177 other Property Tax Consultants falling within the description of the potential class.   Plaintiffs also submit the job description of their position (Ex. 9, O'Connor & Associates Property Tax Consultant Job Standards (OCA-Fraser 000877-78)) reflecting the hours they claim to have worked overtime, and a document entitled "Property Tax Department Expectations that Plaintiffs were required to sign when they began their employment, showing they agreed that any national holidays during peak tax season would not be recognized, no time off requests would be granted for any form of vacation, they would have to work the majority of weekends, and they would have to be available to work weekends and overtime.   Plaintiffs also provide

---

[9] Three of the twenty-six have shown interest in opting in to this lawsuit.

-19-

a proposed notice (Ex. 11).

Plaintiff also request limited discovery because of errors in the spreadsheet produced by O'Connor & Associates regarding contact information for potential class members (Ex. 8) and ask for electronic production to speed up the process, with a declaration to be signed by Defendants' designated representative stating under oath the efforts taken to ensure the list is complete and accurate, subject to penalty for perjury. Discovery of a mailing list and contact information for members is routine in collective actions. *Tolentino*, 716 F. supp. 2d at 646-47.

### Defendants' Response and Motion for Continuance

Defendants seek an oral hearing and ask the Court to refrain from ruling on Plaintiff's motion until after preliminary limited discovery, which would narrow the scope of the motion or the relief or moot the motion as a matter of law. They further argue that the Court already has more than the minimal amount of evidence for the first stage of a *Lusardi* analysis.

Defendants contend that Plaintiffs' motion and declarations at minimum raise questions about their claims that they were nonexempt employees. Plaintiffs admit that they did not keep track of their time or work hours, nor did O'Connor & Associates. Defendants insist that Plaintiffs were exempt employees as defined by Section 13(a)(1) of the FLSA, as defined by Regulations, 29 C.F.R. Part 541. They maintain that "[b]ecause Plaintiffs are presumptively

exempt based on their own pleadings, certification of this matter as a collective action is premature and does not serve the purposes" of the statute.  #14 at p. 3.  Nor do Plaintiffs allege or offer evidence demonstrating that O'Connor & Associates "perpetrated a scheme or had a common policy to intentionally misclassify employees in order to avoid the 'overtime' provisions fo the FLSA." *Id.*  Defendants further contend that Plaintiffs are not similarly situated nor are they similarly situated with those to whom they seek to send notice.  Even if Plaintiffs' claims were true, Defendants argue that the number of overtime hours worked would vary significantly from one employee to the next and proof of these matters would be difficult.  Moreover they would each have to show specifics about their job requirements and duties if they were misclassified by O'Connor & Associates.  Defendants conclusorily argue that Plaintiffs provided different services, exercised differing amounts of discretion, handled different properties and clients differently, were paid differently, and had different experiences and responsibilities.  As noted Defendants insist that Plaintiffs were hired to provide professional and administrative services to property owners, i.e., O'Connor's clients, and were clearly exempt from the statute's overtime provisions.

Defendants make a number of arguments and raise factual issues which the Court finds should properly be raised at the "decertification" stage.  "The fact that some discovery has been

conducted does not increase the plaintiffs' burden at this first, conditional certification stage to the more onerous standard that applies at the second, decertification stage.   That standard is only appropriate 'after discovery is largely complete and the matter is ready for trial.'" *McKnight*, 756 F. Supp. 2d at 802-03, *quoting Mooney*, 54 F.3d at 1214.

### Defendants' Reply (#16)

As noted in Defendants' reply, the Court is not to decide factual disputes or make credibility assessments during the certification process.  *McKnight*, 756 F. Supp. 2d at 802 ("Neither stage of certification is an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations.").   The issue of Plaintiffs' exempt status should not be addressed at this stage of the litigation. "It is not appropriate at this early stage to require plaintiffs to present evidence that would be required to survive a motion for summary judgment." *McKnight*, 756 F. Supp. 2d at 803.   Although initially the court decides if the putative class action plaintiffs' claims are sufficiently similar to support sending notice to potential members, the court only makes its final factual determination whether all plaintiffs are sufficiently "similarly situated" to proceed as a collective action after discovery and in the second "decertification" stage of the certification process. *Acevedo*, 600 F.3d at 519; *Falcon v. Starbucks Corp.*, 580 F. Supp.

-22-

2d at 534.  Here Plaintiffs have made the requisite substantive allegations that the putative class are victims of a single unlawful policy, supported by documentary evidence, and are similar in job description, primary job duties, and payment structure.

Accordingly, for the reasons stated above, the Court

ORDERS that Defendants Rule 12 motions (#8) are DENIED as to the overtime claims, but granted as to their conclusory claim under the Texas Uniform Fraudulent Conveyance Act.  Plaintiffs shall file supplementary pleadings to satisfy Rule 12(b)(6) within twenty days.  The Court further

ORDERS that Plaintiffs' motion for class notice and for limited discovery (#13) is GRANTED and an order will issue by separate instrument.  Defendants' motion for oral hearing (#14) is DENIED.

**SIGNED** at Houston, Texas, this 1st day of February, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE